**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **PROVIDENT ROYALTIES, LLC,** *et al.,* | § | **Case No. 09-33886** |
| | § | **Chapter 11** |
| **Debtors.** | § | **(Jointly Administered)** |
| | § | |
| | § | |
| **MILO H. SEGNER, JR., as Liquidating** | § | |
| **Trustee of the PR Liquidating Trust,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| | § | **Adversary Case No. 11-03385-HDH** |
| **v.** | § | (Previously pending in District Court |
| | § | as Case No. 3:12-cv-1318-F) |
| | § | |
| **RUTHVEN OIL & GAS, LLC,** | § | |
| **WENDELL HOLLAND,** | § | |
| **THE WENDELL AND KARI** | § | |
| **HOLLAND TRUST, and** | § | |
| **CIANNA RESOURCES, INC.** | § | |
| | § | |
| **Defendants.** | § | |

**LIQUIDATING TRUSTEE'S BRIEF IN SUPPORT OF**
**MOTION TO EXCLUDE EXPERT TESTIMONY OF JOHN P. DICK**

COMES NOW Plaintiff Milo H. Segner, Jr., as Liquidating Trustee of the PR Liquidating

Trust ("Plaintiff" or "Trustee") and files this, his Motion to Exclude Expert Testimony of John P.

Dick and Brief in Support.  In support thereof, Plaintiff would show the Court as follows:

**TABLE OF CONTENTS**

I.     SUMMARY OF THE ARGUMENT ................................................................................. 4

II.    ARGUMENT & AUTHORITIES ................................................................................. 4

    A.    Expert testimony must be reliable and aid the jury in its determination. ............... 4

    B.    J.P. Dick's opinions are not reliable because they cannot be tested. ........................ 6

    C.    J.P. Dick's opinions are irrelevant because they rely on information not publicly available. .................................................................................................................... 9

    D.    J.P. Dick's opinions are not reliable because he did not perform an engineering analysis. .................................................................................................................... 11

    E.    J.P. Dick's opinions are not reliable because they are subjective. ........................... 13

    F.    J.P. Dick's opinions are not reliable because he cannot articulate a known or potential rate of error. ........................................................................................... 14

III.    CONCLUSION .......................................................................................................... 15

## TABLE OF AUTHORITIES

Cases

*1st Source Bank v. First Res. Fed. Credit Union*, 167 F.R.D. 61 (N.D. Ind. 1996) ....................... 9
*Allen v. Pennsylvania Engineering Corp.*, 102 F.2d 194 (5th Cir. 1996) ...................................... 5
*Black v. Food Lion, Inc.*, 171 F.3d 308 (5th Cir. 1999) ............................................................... 15
*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) ................................ 5, 6, 8, 9, 11, 15
*Estate of Smith v. C.I.R.*, 65 T.C.M. (CCH) 2808 (T.C. 1993) ...................................................... 10
*Garcia v. BRK Brands, Inc.*, 266 F.Supp.2d 566 (S.D. Tex. 2003) ................................................ 5
*Johnson v. American Honda Motor Corp.*, 923 F.Supp.2d 1269 (D. Montana 2013) .................... 9
*Johnson v. Arkema, Inc.,* 685 F.3d 452 (5th Cir. 2012) ................................................................ 13
*Kelley v. Am. Heyer-Schulte Corp.,* 957 F. Supp. 873 (W.D. Tex. 1997) ...................................... 6
*Lohnes v. Level 3 Communications, Inc.*, 272 F.3d 49 (1st Cir. 2001) ........................................... 9
*Moore v. Ashland Chem. Inc.*, 151 F.3d 269 (5th Cir. 1998) ....................................................... 15
*Moore v. Ashland Chem., Inc.*, 151 F.3d 269 (5th Cir. 1998) (en banc) ........................................ 5
*O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090 (7th Cir. 1994) ....................................... 13
*Pipitone v. Biomatrix, Inc.*, 288 F.3d 239 (5th Cir. 2002) ............................................................. 5
*Stilwell v. Smith & Nephew, Inc.,* 482 F.3d 1187 (9th Cir.2007) .................................................. 9
*Viterbo v. Dow Chem. Co.*, 826 F.2d 420 (5th Cir. 1987) ............................................................. 13
*Wheat v. Pfizer, Inc.*, 31 F.3d 340 (5th Cir. 1994) ........................................................................ 6

Rules

Fed. R. Civ. P. 26 ............................................................................................................................. 8
Fed. R. Civ. P. 37 ............................................................................................................................. 9
Fed. R. Civ. P. 402 .......................................................................................................................... 9
Fed. R. Evid. 702 ........................................................................................................................ 4, 5

## I.      SUMMARY OF THE ARGUMENT

1.      Defendant Cianna Resources, Inc. proffered John P. Dick ("J.P. Dick") to provide a fair market value of producing and non-producing mineral interests located in Oklahoma and Texas that were assigned to the Trustee pursuant to a settlement agreement signed in November 2015, between the Trustee and Ruthven Oil & Gas, LLC, Wendell Holland, and the Wendell and Kari Holland Trust.

2.      The Court should strike J.P. Dick as an expert.  He does not meet the reliability requirements of Rule 702 of the Federal Rules of Evidence for four reasons.  First, J.P. Dick's opinions cannot be tested.  He admits that his opinions could not be tested because they are based on his proprietary documents that he will not provide to the Trustee.   Second, J.P. Dick's opinions are merely subjective and not the proper subject of expert testimony.  Third, J.P. Dick's opinions do not rely any methodology, as he did not perform an engineering analysis on any of the wells he allegedly valued.  Finally, J.P. Dick could not testify to any known or potential rate of error associated with his analysis.

3.      Further. J.P. Dick does not meet the relevancy requirements of *Daubert* because his opinions on fair market value are based on information that is not available to the public or accessible by a willing buyer or seller.  Instead, it relies on information he admits is confidential and proprietary.  Such information does not inform the market and is irrelevant to determining the fair market value.   Therefore, the Court should exclude the testimony of J.P. Dick.

## II.      ARGUMENT & AUTHORITIES

### A.      Expert testimony must be reliable and aid the jury in its determination.

4.      Experts seeking to present opinion testimony to the jury must be qualified by "knowledge, skill, experience, training or education." FED. R. EVID. 702.  Federal Rule of Evidence

702 requires that a testifying expert be qualified and that his or her testimony be reliable and

relevant:

> A witness who is qualified as an expert by knowledge, skill, experience, training,
> or education may testify in the form of an opinion or otherwise if:
>
> (a)      the expert's scientific, technical, or other specialized knowledge will help
>          the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b)      the testimony is based on sufficient facts or data;
>
> (c)      the testimony is the product of reliable principles and methods; and
>
> (d)      the expert has reliably applied the principles and methods to the facts of the
>          case.

FED. R. EVID. 702. "[U]nder the Rules the trial judge must ensure that any and all scientific

testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharm.,*

*Inc.*, 509 U.S. 579, 589 (1993). Moreover, "[t]he facts on which the expert relies must be

reasonably relied on by other experts in the field." *Allen v. Pennsylvania Engineering Corp.*, 102

F.2d 194, 198 (5th Cir. 1996). "Under the regime of *Daubert* a district judge asked to admit

scientific evidence must determine whether the evidence is genuinely scientific, as distinct from

being unscientific speculation offered by a genuine scientist." *Garcia v. BRK Brands, Inc.*, 266

F.Supp.2d 566, 577 (S.D. Tex. 2003).

     5.      Trial courts must act as "gate-keepers" and make a "preliminary assessment of

whether the reasoning or methodology underlying the testimony is scientifically valid and of

whether that reasoning or methodology properly can be applied to the facts in issue." *Pipitone v.*

*Biomatrix, Inc.*, 288 F.3d 239, 243-44 (5th Cir. 2002) (quoting *Daubert*, 509 U.S. at 592−93).

Importantly, the party offering the expert testimony bears the burden of establishing that it is

admissible. *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc).

**B. J.P. Dick's opinions are not reliable because they cannot be tested.**

6. "The hallmark of acceptable testimony turns on whether the scientific conclusion is testable and has been tested." *Kelley v. Am. Heyer-Schulte Corp.,* 957 F. Supp. 873, 876 (W.D. Tex. 1997) (discussing the application of *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993)). *Daubert* establishes expert testimony must be relevant and reliable. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). The key to determining reliability under *Daubert* "is whether the expert's hypothesis can be and has been tested." *Wheat v. Pfizer, Inc.*, 31 F.3d 340, 343 (5th Cir. 1994). In this case, J.P. Dick admitted his hypotheses and conclusions cannot be tested, because he will not provide the underlying documents which allegedly support his opinion.

> Q   Okay. All right. Now, I want to talk to you a little bit about these in-house documents that you reviewed. Can you show me in your report where you have attached those in-house documents that you reviewed and relied upon in formulating your opinions?
>
> A   No.
>
> Q   Why not?
>
> A   Most of those, if not all of those, are part of confidentiality documents. I do a lot of work for a lot of companies, private equities and public and private companies. And part of every agreement or every engagement I do with them involves a confidentiality where this information I'm given or information I learn through meetings or evaluations of their properties for different -- for different occurrences, whether it's litigation or regulatory or acquisition, divestures, is -- I have to hold very confident.
>
> **Q   I understand. So you have a significant number of documents, as I understand it, that you have relied upon that you have not produced as part of your report. Is that true?**
>
> **A   Yes, sir.**
>
> **Q   These in-house documents form a significant portion of your opinions; is that correct?**
>
> **A   Yes.**

**Q  And without me being able to see it, there's no way for me to test it.  Would you agree with that?**

**A  Yes.**

Q   So, in other words, I have to take you at face value that these in-house documents are true, accurate, and scientific; is that true?

MR. JOHNSON:  Object to the form.

THE WITNESS:  I think you have to take me at my word that I'm using that information correctly and ethically and morally correct in making my assessments.

Q   (By Mr. Sommerman) All right.  But I'm talking about being able to test it, being able to test your opinions.  I'd have to be able to see these in-house documents in order to test your opinions and come up with the accuracy of it; is that fair?

A   Yes, sir.

Q   And you are unwilling to give those -- I'm not fussing with you.  I'm just saying, you're unwilling to give those up; right?

A   That's correct.

**Q  And so there really isn't a way for me to test your opinions because a significant portion of your in-house documents you rely upon in formulating your opinions?**

**A  That's correct.**

Q   Okay.  Is it fair to say that there is no way to test your opinions, then, unless someone gets these in-house documents?

A   Outside -- I mean, as far as -- well, that's a good question.

MR. JOHNSON:  Don't speculate.

THE WITNESS:  Could you ask me that question one more time, sir?

**Q  (By Mr. Sommerman) Sure.  Is there any way that I can test your opinions without seeing and evaluating these in-house documents?**

**A  No.**

**Exhibit 1**, Deposition of J.P. Dick, 30:6 - 32:19, App. at 5 (emphasis added).

**Q   Right.  But these -- what you relied upon these, map data, well data, production data, you are unwilling to share with us the very information that you relied upon in formulating your opinions; true?**

**A   It's something that I've paid for to put together and spent time and my money on to pull together, build, primarily off public data.  So, yes.**

Q   Okay.  And the way you arrange that data and how you interpret that data within these programs that you have is proprietary to you; true?

A   Yes.

Q   You feel it gives you a better advantage than others; correct?

A   Yes, sir, it does.

Q   Okay.  And it is these datas, map data, well data, production data, that you're unwilling to share because of all the work you put into it?

A   Yes, sir.

**Exhibit 1**, Deposition of J.P. Dick, 71:22 – 72:14, App. at 8 (emphasis added).

7.       "Proposed testimony must be supported by appropriate validation—i.e., 'good grounds,' based on what is known.  In short, the requirement that an expert's testimony pertain to 'scientific knowledge' established a standard of evidentiary reliability." *Daubert*, 509 U.S. at 590. The Court should exclude J.P. Dick's testimony because it is not testable and fails the most basic requirement of Rule 507 of the Federal Rules of Evidence and *Daubert*.

8.       J.P. Dick's failure to disclose all facts or data considered in forming his opinions also violates Rule 26 of the Federal Rules of Civil Procedure, which is a separate basis on which the Court should exclude J.P. Dick's testimony.  Rule 26 requires that "the facts or data considered by the witness" must be disclosed in the expert report.  FED. R. CIV. P. 26(a)(2)(B)(ii).[1]  It is well

---

[1] While Defendant attempted to cure this obvious defect on Oct. 17, 2016, the "production" consisted of only publicly available information which could not be accessed on counsel's computer. Additionally, Defendant has not produced J.P. Dick's non-publically available data. Defendant's production did not cure the Rule 26 deficiencies.

settled that the requirements of Rule 26(a)(2) are "mandatory and self-executing." *Lohnes v. Level 3 Communications, Inc.*, 272 F.3d 49, 59 (1st Cir. 2001).

9.       Rule 37 mandates "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(a). Importantly, "[t]he exclusion of undisclosed information is automatic; there is no need for the opposing party to make a motion to compel disclosure, as authorized by Rule 37(a)(2)(A) in order to compel a further disclosure, as a predicate for imposition of the sanction of exclusion." *1st Source Bank v. First Res. Fed. Credit Union*, 167 F.R.D. 61, 64 (N.D. Ind. 1996).

**C.       J.P. Dick's opinions are irrelevant because they rely on information not publicly available.**

10.       Ultimately, if expert testimony is not relevant, it is not admissible. "Rule 702 further requires that the evidence or testimony 'assist the trier of fact to understand the evidence or to determine a fact in issue.' This condition goes primarily to relevance. 'Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful'" *Daubert*, 509 U.S. at 591 (citation omitted).

11.       If expert testimony has no tendency to make a fact of consequence to the outcome of the case more or less probable, then it is not relevant and must be excluded. FED. R. CIV. P. 402. In evaluating relevancy, a court looks to whether there is a link between an expert's testimony and the matter to be proved. *Johnson v. American Honda Motor Corp.*, 923 F.Supp.2d 1269, 1277 (D. Montana 2013) (citing *Stilwell v. Smith & Nephew, Inc.*, 482 F.3d 1187, 1192 (9th Cir.2007)). In determining fair market value, experts should only consider the information available to the public or information which a hypothetical buyer or seller could gain access.

12.     In *Estate of Smith v. C.I.R.*, the United States Tax Court compared the competing opinions of two experts who each opinion on the fair market value of a decedent's mineral interests. *Estate of Smith v. C.I.R.*, 65 T.C.M. (CCH) 2808 (T.C. 1993). The expert opinion accepted by the court relied on publicly available information: (1) comparable sales and list prices on adjacent and nearby mineral interest properties, (2) conducted a discounted cash flow analyses for producing interested, and (3) accounted for area-specific factors to individually value 281 mineral interest properties. *Id.*

13.     Importantly, this expert explained that given the fragmented and fractional nature of the mineral interest properties, "it would be difficult to find a single buyer or even several buyers for such properties." *Id.* The court found that these relevant costs and various factors that a potential buyer would have to pay and thus take into account in determining the price he would be willing to pay was consistent with the definition of fair market value. *Id.* "Major oil companies would be unlikely candidates because the interests were too small and widely dispersed. Independent operators were more likely potential purchasers, but only if they were already profitably operating mineral interest properties in or near the section in which decedent's mineral interest properties were located." *Id.*

14.     In this case, J.P. Dick admits that much of the information he relies on is confidential or proprietary. Said another way, much of the information relied on by J.P. is information that is not available to the general public and would not be accessible by a willing buyer or seller:

> Q   Okay. All right. Now, I want to talk to you a little bit about these in-house documents that you reviewed. Can you show me in your report where you have attached those in-house documents that you reviewed and relied upon in formulating your opinions?
>
> A   No.

Q   Why not?

A   Most of those, if not all of those, are part of confidentiality documents. I do a lot of work for a lot of companies, private equities and public and private companies. And part of every agreement or every engagement I do with them involves a confidentiality where this information I'm given or information I learn through meetings or evaluations of their properties for different -- for different occurrences, whether it's litigation or regulatory or acquisition, divestures, is -- I have to hold very confident.

**Q   I understand. So you have a significant number of documents, as I understand it, that you have relied upon that you have not produced as part of your report. Is that true?**

**A   Yes, sir.**

**Q   These in-house documents form a significant portion of your opinions; is that correct?**

**A   Yes.**

**Exhibit 1**, Deposition of J.P. Dick, 30:6 – 31:6, App. at 5 (emphasis added).

15.     Fair market value is determined based on information available to the public and information to which a willing buyer and seller would have access. Because the information relied on by J.P. Dick is irrelevant to determining the fair market value of the mineral interests at issue, the Court should exclude his testimony.

   **D.     J.P. Dick's opinions are not reliable because he did not perform an engineering analysis.**

16.     To determine reliability, *Daubert* also establishes that a court must look at whether the reasoning or methodology underlying an expert's testimony is "scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993). J.P. Dick does not meet this requirement because his "methodology" is flawed; he did not perform an engineering analysis when preparing his expert report.

17.     In *El Paso Natural Gas Go.*, a court struck an expert because he did not provide

any expert testimony for the property at issue in that case. *El Paso Natural Gas Go.*, 96 F.3d at 1465. If an expert is going to testify to the value of property in litigation by comparing it to the value of other property, it must prove that the properties are actually comparable. The D.C. Circuit stated that it is not enough to "point out that the properties were located in South Texas, were 'primarily' of gas reserves, were near in time to the . . . transfer, and were sold in excess of the engineering estimate of the properties . . ." *Id.*

18.     Specifically, there were concerns over El Paso's failure to compare significant factors, "such as differences in the amount of additional drilling costs that must be incurred on each respective property or the cost to produce and deliver reserves." *Id.* Essentially, the party offering the expert testimony must establish the comparability of the two properties. As the D.C. Circuit correctly pointed out, "**Gold and fool's gold are similar in many respects, but the value of one hardly serves as proxy for the value of the other.**" *Id.* (emphasis added).

19.     In *Player*, an expert was hired to opine on the value of a piece of contaminated property. *Player*, 240 Fed. Appx. at 519. The expert looked at another, separate piece of property that was also contaminated and assumed that the property at issue in the *Player* case comparable, and then assumed an additional loss. *Id.* at 520. However, the court struck his expert testimony because he had no evidence indicating that the two contaminations were similar, including the type or degree of contaminations. *Id.* at 520. Said another way, the court struck the expert because he had no basis for determining that the properties were similar.

20.     Similarly, J.P. Dick failed to perform any engineering analysis to determine the fair market value of the specific wells and mineral interests at issue.

Q   Let's talk a little bit about your methodology. First of all, did you engineer any wells?

A   For this evaluation?

Q   Yes.

A   No.

Q   Not a single one?

A   Well, I -- I take that back.  I downloaded production data on all 753 producing wells. I scanned through the production on many or most or almost all of them.  And I did go back and look at the 16 wells that Mr. Nichols had pulled up, so I made an assessment of those 16 wells.  But as far as -- but that's -- so I did engineer those wells.

Q   Let's try and go back if we can.  I'm talking about for your initial report, not your rebuttal. Okay?  So you would not have, as I understand it, seen Mr. Nichols' report yet --

A   No.

Q   -- do you think?

A   No.

Q   Now, for your initial report, did you engineer any wells?

MR. JOHNSON:  Object to the form.

THE WITNESS:  No, sir.

**Exhibit 1**, Deposition of J.P. Dick, 57:22 – 58:21, App. at 6-7 (emphasis added).

21.      The Court should exclude J.P. Dick's testimony.  His failure to conduct an engineering analysis prohibits his testimony under Rule 507 of the Federal Rules of Evidence and *Daubert.*

**E.      J.P. Dick's opinions are not reliable because they are subjective.**

22.      The reliability prong of *Daubert* further mandates that expert testimony be more than a subjective belief. *Johnson v. Arkema, Inc.,* 685 F.3d 452, 459 (5th Cir. 2012).  "Without more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible." *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 424 (5th Cir. 1987); *see also O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090 (7th Cir. 1994) (expert testimony based on a subjective

methodology held property excluded). Accordingly, subjective beliefs are not the proper subject

of expert testimony and should be excluded. J.P. Dick admits his testimony is subjective.

> Q    When you say you did an assessment, what do you mean by that?
>
> A    Well, I look at where the location is.
>
> Q    Uh-huh.
>
> A    And I determine what I felt based on current activity, past activity, reserve analysis by different formations that I had performed, transactions, poolings, this -- all that sort of information. Determined a -- what I felt was a dollar-per-acre value per section.
>
> **Q    Uh-huh.  Okay.  So would that be a subjective analysis that you did?  In other words, it was basically your own experience; is that true?**
>
> **A    Yes.**

**Exhibit 1**, Deposition of J.P. Dick, 60:12-25, App. at 7 (emphasis added).

> Q    What I don't understand is all of those things you told me, even the location of the company, all those things that come into play there, how that translates into $100 an acre?
>
> A    Because it -- it's all the factors that I consider before -- when I assess a dollar per acre value.  Do I think the company is going to drill the wells?  Do I think they're going to have a problem getting rid of the water?  Do I think -- what price deck it's going to take for them to start developing it again?  It all goes into it, sir.
>
> **Q    So that is your subjective interpretation of all of those factors; true?**
>
> **A    Yes.**

**Exhibit 1**, Deposition of J.P. Dick, 100:5-18, App. at 9 (emphasis added).

23.    Accordingly, the Court should exclude J.P. Dick's testimony because it is a

subjective, inadmissible opinion.

**F.    J.P. Dick's opinions are not reliable because he cannot articulate a known or potential rate of error.**

24.     In considering the reliability of proposed expert testimony, "the court ordinarily should consider the known or potential rate of error and the existence and maintenance of standards controlling the technique's operation." *Daubert*, 509 U.S. at 594.   The failure to determine or apply a potential rate of error weighs in favor of excluding an expert's opinions, as such testimony is considered speculative and "lacking any scientific validity." *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 279 (5th Cir. 1998). *See also Black v. Food Lion, Inc.*, 171 F.3d 308, 313 (5th Cir. 1999) (finding the expert's testimony was not sufficiently reliable to be admitted when, taking into consideration other *Daubert* factors, there was no known potential rate of error).

25.     J.P. Dick admits that there is no known or potential rate of error relating to his analysis:

> Q    …  Do you know what your error rate was, the error rate for your evaluations?  I imagine that there were some errors here and there, true, for the things that you did?
>
> A    I don't know what you -- could you ask -- I don't know what you mean by my error rate.
>
> Q    Sure.  You know, in other words, what is the chance you're wrong for each particular piece of property?  Is there an error rate for it?
>
> A    I don't look at it that way.  I just give my  best opinion as to what I come up with and put it  down, and I feel like I'm -- I'm pretty close if not very close to my -- my numbers.
>
> Q    But we can't really know what that error rate may be; true?
>
> A    I don't know.

**Exhibit 1**, Deposition of J.P. Dick, 72:19-73:9, App. at 8 (emphasis added).

26.     Accordingly, the Court should exclude J.P. Dick's testimony because he admits there is no potential or known rate of error in violation of *Daubert*.

### III.    CONCLUSION

WHEREFORE, premises considered, Plaintiff respectfully requests the Court grant

Plaintiff's Motion to Strike John P. Dick and grant Plaintiff such other and further relief to which

it may be justly entitled.


Respectfully submitted,

*/s/ Andrew B. Sommerman*

Andrew B. Sommerman
Texas Bar No. 18842150
George (Tex) Quesada
Texas Bar No. 16427750
Sean J. McCaffity
Texas Bar No. 24013122
**SOMMERMAN, MCCAFFITY & QUESADA, L.L.P.**
3811 Turtle Creek Blvd., Suite 1400
Dallas, Texas 75219
P: (214) 720-0720
F: (214) 720-0184


Jerry C. Alexander
Texas Bar No. 00993500
Christopher A. Robison
Texas Bar No. 24035720
**PASSMAN & JONES, P.C.**
1201 Elm Street, Suite 2500
Dallas, Texas 75270-2599
P: (214) 742-2121
F: (214) 748-7949

Michael R. Rochelle
Texas Bar No. 17126700
**ROCHELLE MCCULLOUGH LLP**
325 N. St. Paul, Suite 4500
Dallas, Texas 75201
P: (214) 953-0182
F: (214) 953-0185


Jerry Kenneth (J. Ken) Johnson, II
Texas Bar No. 10746300
**FLEMING, NOLEN & JEZ, L.L.P.**
2800 POST OAK BLVD., SUITE 4000
HOUSTON, TEXAS 77056
(713) 621-7944 (OFFICE)
(713) 621-9638 (FAX)


**COUNSEL FOR PLAINTIFF**

## CERTIFICATE OF CONFERENCE

The parties conferred on October 18, 2016 regarding the relief sought in this motion. Counsel for Defendant Cianna opposes this Motion.

*/s/ Michael R. Rochelle*
Michael R. Rochelle

## CERTIFICATE OF SERVICE

I hereby certify this 18th day of October, 2016 that a copy of the foregoing document was filed electronically in compliance with L.B.R. 7005-1. Therefore, this document was served on all counsel receiving electronic service in this case. L.B.R. 7005-1.

*/s/ Andrew B. Sommerman*
Andrew B. Sommerman